UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MARK JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Civil. No.: 5:24-cv-000380-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| HCL AMERICA, INC., ) | **&** |
| ) | **ORDER** |
| Defendant. ) | |
| ) | |

*** *** *** ***

This matter is before the Court upon Defendant HCL America's Motion to Compel Arbitration and Stay Proceedings through Arbitration. [R. 11.] On November 25, 2024, Plaintiff Mark Johnson filed suit against Defendant HCL America in Fayette Circuit Court. [R. 1-1.] Mr. Johnson therein alleged violations of the Fair Labor Standards Act and Kentucky's corresponding Wage and Hour Act. *Id.* at 4-6. On December 23, 2024, HCL filed a notice of removal for all claims pursuant to 28 U.S.C §§ 1331, 1441, and 1446. [R. 1 at 1.] On August 13, 2025, HCL filed a Motion and Compel Arbitration, asserting that Mr. Johnson's employment contract contained an arbitration agreement and that all claims in this lawsuit fall within the scope of that agreement. [R. 11.] Plaintiff filed a response in opposition to Defendant's motion on September 19, 2025. [R. 16.] Defendant filed a reply on October 3, 2025. [R. 17.] As such, this matter is fully briefed and ripe for review. The Court, having reviewed the record and for the reasons set forth herein, will **GRANT** HCL's Motion to Compel Arbitration.

**I**

Defendant HCL America employed Plaintiff Mark Johnson as a Technical Specialist from May 2021 to December 2023. [R. 1-1. at 1-2.] HCL provides information technology services across various industries ranging from aerospace and defense to life sciences and healthcare. [R. 1-1 at 1.] As part of his employment, Mr. Johnson was on-call for week-long increments, during which he was required to respond to incidents—such as clients experiencing software errors, Internet issues, and other IT service outages—within ten minutes of receiving notification of such incidents. [R. 1-1 at 1-2.] When an incident occurred during on-call hours, Mr. Johnson would receive a call notifying him of the incident. [R. 1-1 at 2.] Mr. Johnson then had ten minutes to initiate a conference call with the engineering response team to begin responding to the incident. *Id.* at 3. Mr. Johnson claims that, as a result of this requirement, he was unable to leave his home or engage in daily activities during his on-call weeks. *Id.* at 1. Mr. Johnson further alleges that HCL paid him forty dollars per day when he was on-call and his regular wages during an active incident. *Id.* The essence of Mr. Johnson's claim is that HCL violated the Fair Labor Standards Act and Kentucky's corresponding Wage and Hour Act by not paying him his regular hourly rate or overtime rate for the time he was on-call but not actively responding to an incident. *Id.* at 4-6.

At the time of Mr. Johnson's hire, he electronically agreed to a Dispute Resolution Agreement. [R. 11-1; R. 11-2.] Relevant to the instant motion, this Agreement provides that disputes covered under the Agreement shall "be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." [R. 11-1 at 2.] The Agreement specifically applies to "disputes arising out of and relating to the . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters." *Id.* The

2

Agreement further provides that an employee may opt-out of the Agreement by providing notice to the Human Resources Department within thirty days of the first day of active employment. *Id.* at 6.

On November 25, 2024, Mr. Johnson filed a complaint against HCL in Fayette Circuit Court asserting claims that HCL had violated the Fair Labor Standards Act and corresponding Kentucky law. [R. 1-1.] On December 23, 2024, HCL removed the case to this Court. [R. 1.] HCL filed its answer on January 22, 2025, and this Court issued an Order for Meeting and Report on January 27, 2025. [R. 6; R. 7.] Pursuant to this Order, the parties met, conferred, and filed their joint report on February 26, 2025, and this Court entered a Scheduling Order on February 26, 2025. [R. 8; R. 9.] The parties then exchanged discovery in the form of requests for admission, interrogatories, and requests for production in accordance with the Scheduling Order. [R. 16 at 3.]

On June 2, 2025, HCL issued a subpoena to third-party phone service TextNow seeking phone records and location data related to Mr. Johnson's phone number, and HCL received those records in July 2025. [R. 16-1.] On July 23, 2025, counsel for HCL provided Mr. Johnson's counsel with the records they received from TextNow. [R. 16-2.] On that very same day, counsel HCL indicated that HCL had located Mr. Johnson's arbitration agreement, and asked Mr. Johnson's counsel if Mr. Johnson was amenable to staying this litigation pending arbitration. [R. 17-1.] Mr. Johnson's counsel responded that he was not agreeable to arbitration. *Id.* Subsequently, on August 13, 2025, HCL moved to compel arbitration on the grounds that Mr. Johnson's employment contract contained a valid and enforceable arbitration clause. [R. 11.] In response, Mr. Johnson does not contest the validity or enforceability of the arbitration clause but instead asserts that HCL's "eight-month delay and extensive litigation conduct waives

3

arbitration." [R. 16 at 5.] In its reply, HCL contends that it engaged in limited discovery before it became fully aware of the arbitration agreement and thus has not waived its right to invoke the arbitration agreement. [R. 17 at 1.] Further, HCL submits that "the arguments Mr. Johnson raises in his Response should not be decided by this Court but instead must be submitted to and resolved by an arbitrator." *Id.* The Court will address these arguments in turn.

## II

### A

The Federal Arbitration Act "establishes a liberal policy favoring arbitration agreements." *Parker v. Tenneco, Inc.*, 114 F.4th 786, 792 (6th Cir. 2024) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018)). This policy is not an open invitation for the Court to "devise novel rules to favor arbitration over litigation," but rather an "acknowledgement of the FAA's commitment. . .to place [arbitration] agreements upon the same footing as other contracts." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022); *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 302 (2010). Pertinent to this case, the FAA provides a party to a valid arbitration agreement with the right to seek a stay of a case and compel arbitration. *See* 9 U.S.C. §§ 3-4. However, § 3 of the FAA provides that the party moving to compel arbitration must not be in "default" of seeking arbitration. *Id.* at § 3. Courts have interpreted this language in the FAA to mean that there is a certain point at which a party has overstayed their welcome in court, such that they have waived their right to compel arbitration. *See e.g. Kloosterman v. Metropolitan Hospital*, 153 F.4th 501 (6th Cir. 2025) ("If a defendant litigates in court for a long enough time before seeking arbitration, one would naturally say that the defendant has not lived up to the 'promise' to arbitrate"). The instant motion requires this Court to determine if HCL's

4

participation in this litigation rose to the point of "default" or in other words, waived its right to arbitrate through inconsistent litigation conduct.

1

As a threshold matter, HCL contends that this Court should not even reach the waiver issue, but instead that the issue must be submitted to and resolved by an arbitrator. [R. 17 at 1.] HCL reasons that because the Dispute Resolution Agreement assigns "*all* disputes *without limitation* to the arbitrator except legal questions about contract formation, Mr. Johnson's assertion that HCL waived its right to compel arbitration must be arbitrated." [R. 17 at 4.] Because HCL raises this issue in its reply, Mr. Johnson did not have the opportunity to respond to this particular argument. However, after considering HCL's argument and the relevant authority, this Court finds that it is well-suited to decide the waiver issue.

As HCL notes, courts presume judicial resolution of gateway questions such as waiver, even where (as here) the parties have agreed to a broadly applicable arbitration clause. *In re Chrysler Pacifica Fire Recall Prods. Liability Litig.*, 143 F.4th 718, 722-23 (6th Cir. 2025). The Sixth Circuit has opined that the reason for this presumption is twofold. *Id.* at 723. First, the Court is best suited to determine if the party compelling arbitration abused the litigation or pre-litigation process because the Court has overseen the litigation process. *JPD, Inc. v. Chronimed Holdings, Inc.,* 539 F.3d 388, 393 (6th Cir. 2008). Second, it would be "exceptionally inefficient" to refer a waiver dispute to an arbitrator, knowing that it could be referred right back to the Court. *Id.* Thus, judicial resolution of the waiver issue will advance the parties to a resolution of the underlying dispute in a timelier fashion. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002).

The presumption in favor of judicial resolution, like all presumptions, may be rebutted by showing that the parties "clearly and unmistakenly" agreed to arbitrate "gateway questions of arbitrability" such as waiver. *Chrysler*, 143 F.4th at 723. HCL posits that the parties "clearly and unmistakenly" agreed to arbitrate all disputes *without limitation* arising out of or relating to interpretation or application of the Dispute Resolution Agreement *except* questions about the enforceability, revocability, or validity of the Agreement. [R. 11-1 at 2.] It follows then, HCL asserts, that because issues regarding waiver were not listed as an exception in the Agreement, they must be submitted to an arbitrator. [R. 17 at 3-4.] However, both the Supreme Court of the United States and the Sixth Circuit have rejected similar arguments, holding that broad clauses, like the one in the Agreement between HCL and Mr. Johnson, do not cover gateway issues such as waiver when waiver is not explicitly mentioned in the agreement. *See e.g. Rent-A-Center v. Jackson*, 561 U.S. 63 (2010); *Chrysler*, 143 F.4th at 718. Because these gateway issues are of "limited scope," parties generally expect that a court, not an arbitrator, would decide them. *Howsam*, 537 U.S. at 83-84. Thus, where an arbitration agreement is silent on the issue, courts will typically decide the issue of waiver. *Id.* Seeing no reason to depart from this general rule, the Court will proceed to the merits of Mr. Johnson's claim that HCL waived its right to arbitrate through inconsistent litigation conduct.

### 2

### a

Until recently, Sixth Circuit precedent directed that a party had waived its right to arbitrate when it both (1) took actions completely inconsistent with any reliance on an arbitration agreement and (2) delayed its assertion to such an extent that the opposing party incurred actual prejudice. *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010).

However, in *Morgan v. Sundance, Inc.*, the Supreme Court of the United States held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." 596 U.S. at 419. The Court further cautioned that the FAA's policy favoring arbitration "does not authorize federal courts to invent special arbitration-preferring procedural rules," but rather, this policy merely directs courts to place agreements to arbitrate "upon the same footing as other contracts." *Id.* at 418. The Court did not enunciate a new standard, but instead, directed courts to use ordinary procedural rules—either of waiver or forfeiture—just as they would outside the arbitration context. *Id.* at 419.

Following *Morgan*, the Sixth Circuit has assumed that the first element of its waiver test survived *Morgan*.[1] *Chrysler*, 143 F.4th at 723. That is, a party waives its right to arbitrate when it "takes actions that are completely inconsistent with any reliance on an arbitration agreement." *Id.* at 974. Importantly, the waiver analysis is a totality of the circumstances test—there is no bright line at which a party has waived its right to arbitrate. *Schwebke v. United Wholesale Mortgage LLC*, 96 F.4th 971, 975 (6th Cir. 2024). Courts consider a number of factors in determining whether a party has waived its right to arbitrate including: when and how the party raised the arbitration issue, the overall progress of the case when they filed the motion to compel arbitration, and whether the party made any "affirmative requests for relief" before moving to compel arbitration. *Id.* at 975-76.

In light of the policy favoring enforcement of an arbitration agreement, "courts will not lightly infer a party's waiver of its right to arbitration." *Hurley*, 610 F.3d at 338. It follows then,

---

[1] Initially, the Sixth Circuit "assumed without deciding" that the first element survived *Morgan*. *Schwebke v. United Wholesale Mortgage LLC*, 96 F.4th 971, 974-75 (6th Cir. 2024). However, the Sixth Circuit has since decided cases applying the first element without any such qualifiers. *See Chrysler*, 143 F.4th at 723; *Kloosterman*, 153 F.4th at 507-08.

that courts will only find waiver in "cases with the most compelling fact patterns." *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008). With that in mind, the Court turns its attention to the facts at hand.

**b**

Beginning with when and how HCL raised the arbitration issue, HCL first mentioned arbitration in its Answer where it pled arbitration as one of its twenty-four affirmative defenses. [R. 6 at 7.] HCL did not explicitly mention arbitration again until several months later, in an email to Plaintiff's counsel; however, HCL states that it produced the unsigned Dispute Resolution Agreement to Mr. Johnson in discovery. [R. 17-1.] Next, turning to the overall progress of the case when HCL moved to compel arbitration, the case was still in its early stages, albeit some discovery had been exchanged between the parties. HCL had moved for an extension of time to file an Answer, participated in the 26(f) planning meeting, produced over 1,000 pages of documents, and propounded discovery requests on Mr. Johnson and a third-party. [R. 16 at 9.] However, there were no dispositive motions filed by either party, and both the 26(f) planning meeting and exchange of discovery were—as HCL points out—ordered by this Court. [R. 7; R. 9.] Mr. Johnson emphasizes HCL's issuance of a third-party subpoena on third-party TextNow, asserting that HCL would not have been able to use this procedure in arbitration, and thus, used this Court's power to gain an advantage that it would not have had in arbitration. [R. 16 at 10-12.] This concern is further heightened by the fact that on the very same day that HCL produced the documents from TextNow to Mr. Johnson, it also mentioned—for the first time since its answer—that it was interested in moving this dispute to arbitration. [R. 16-2; R. 17-1.]

In *Schwebke*, the Sixth Circuit found the right to arbitrate had been waived when the parties engaged in "extensive discovery," including the use of fourteen third-party subpoenas.

8

96 F.4th at 975-76.  The parties disputed whether arbitrator would have been able to issue third-party subpoenas in arbitration, but the court held that regardless, the defendant had "invoked the power of th[e] court under the Federal Rules of Civil Procedure" which suggested an intent not to enforce its arbitration clause.  *Id.* at 976.  The Court also noted that conduct suggesting an attempt to secure a "tactical advantage" supports a finding of waiver.  *Id.* at 977.  Here, HCL contends that it was merely a coincidence that it first overtly indicated its intent to arbitrate this matter immediately after using a procedure only available to it in Court.  [R. 17 at 10.]  To the Court, it seems that HCL was in fact trying to secure a "tactical advantage" which does weigh in favor of a finding of waiver.  However, taking the totality of the circumstances, as it must, the Court finds that this is not a case with the "most compelling" of fact patterns that would warrant a finding of waiver.

Although *Schwebke* directs that issuing a third-party subpoena suggests an intent not to enforce an arbitration clause, the Court did not find that the defendant had waived its right to arbitrate on this fact alone.  96 F.4th at 971.  Starting with the obvious, the defendant in *Schwebke* issued fourteen third-party subpoenas, while HCL only submitted one.  *See id.*  Additionally, the defendant in *Schwebke* did not raise arbitration as an affirmative defense in its answer, produced tens of thousands of pages of documents, produced witnesses for deposition and participated in those depositions, took depositions, filed its witness list, and agreed to an extension of the discovery deadline. *Id.* at 973.

By contrast, HCL did plead arbitration as an affirmative defense in its answer and even specifically stated that it did not waive enforcement of the arbitration agreement, so Mr. Johnson was on notice of the potential for arbitration.  [R. 6 at 7.]  HCL also notes that it provided Mr. Johnson with an unsigned copy of the Dispute Resolution Agreement, as a response to discovery

9

requests, in April 2025 while HCL took steps to ensure that Mr. Johnson had signed—and had not opted out of—the Agreement. [R. 17 at 10.] Neither HCL nor Mr. Johnson have noticed any depositions, no discovery deadlines had passed at the time HCL filed its motion to compel arbitration, and discovery is not set to close until February 26, 2026, several months after HCL filed the instant motion to compel arbitration. [R. 9 at 2.]

Additionally, HCL has not filed any dispositive motions or counterclaims in this action, which Courts have found weigh heavily in favor of finding waiver. *Schwebke*, 96 F.4th at 976 ("In most of our cases finding arbitration waiver, there has been an affirmative request for relief, such as the filing of a dispositive motion.") Although Courts have found waiver when no dispositive motions were filed, and vice versa, Courts will typically find a defendant has acted "entirely inconsistent" with the intent to arbitrate if the defendant first seeks "an immediate and total victory" and then moves to arbitrate only after the court rejects this initial attempt to end the dispute. *Kloosterman v. Metropolitan Hospital*, 153 F.4th 501, 508 (6th Cir. 2025) ("[D]efendants may not play heads I win, tails you lose by keeping arbitration in reserve just in case a court does not reject the entire case at the start.")

In the present case, HCL has not sought a victory from this Court and then moved to compel arbitration in an attempt to get two "bites" at the metaphorical apple. In fact, other than a request for additional time to file an Answer, the present motion is HCL's only other request of this Court. Coupled with the fact that almost all of HCL's litigation conduct has been in response to this Court's orders, the Court finds that HCL has not acted "entirely inconsistent" with the intent to arbitrate. As such, HCL has not waived its right to arbitrate through inconsistent litigation conduct, and the Court will proceed to briefly analyze the applicability and enforceability of the arbitration agreement.

**B**

Before compelling an unwilling party to arbitrate, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003); *see also* 9 U.S.C. § 2. The Sixth Circuit has outlined four steps a district court must take in analyzing a motion to compel arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of the agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (*quoting Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Notably, only the first three steps are relevant to the determination of whether to compel arbitration—the fourth step only becomes relevant if some claims are subject to arbitration and others are not. *See Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938 (6th Cir. 2021). Although Mr. Johnson does not contest the validity or applicability of the arbitration agreement, in the interest of thoroughness, the Court will briefly address these steps.

**1**

The Court first examines whether the parties agreed to arbitrate. The Federal Arbitration Act governs the interpretation and enforceability of arbitration clauses and provides that arbitration agreements are enforceable according to their terms. *See* 9 U.S.C. § 2. The Agreement at issue here is clearly labeled as "DISPUTE RESOLUTION AGREEMENT" in bold, capitalized font, and conspicuously centered on the page. [R. 11-1 at 2.] Mr. Johnson

11

devotes a portion of his Response to discussing the potential policy implications of arbitration agreements, stating that over half of the American workforce has been "forced into mandatory arbitration of their employment disputes." [R. 16 at 4.]  While this discussion adds context to Mr. Johnson's aversion to arbitration, it is not particularly relevant to this motion.  To the extent that Mr. Johnson is asserting that HCL "forced" him to arbitrate his claim, the Court simply notes that Mr. Johnson had the right to opt out of the Dispute Resolution Agreement, and the Agreement stated—in bold font—that arbitration was not a mandatory condition of Mr. Johnson's employment at HCL.  [R. 11-1 at 6.]  Mr. Johnson agreed to the terms of the Agreement with an electronic signature and did not opt out.  [R. 11-2.]  As such, the parties clearly agreed to arbitration in this matter.

### 2

The Court next examines the scope of Mr. Johnson and HCL's Agreement.  When assessing whether a claim falls within the scope of an arbitration clause, a court looks to the plain language of the agreement.  *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 383 F. App'x 517, 521 (6th Cir. 2010); *see also Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006).  As discussed above, the Agreement specifically applies to "disputes arising out of and relating to the . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters."  [R. 11-1 at 2.]  All of Mr. Johnson's claims arise out of the FLSA and Kentucky's corresponding wage and hour laws and therefore fall squarely within the scope of the Agreement.  [R. 1-1 at 4-6.]

### 3

Next, the Court examines whether Congress intended claims under the Fair Labor Standards Act to be nonarbitrable.  As courts in the Sixth Circuit have held, there is no indication

that Congress intended to preclude the arbitration of FLSA claims." *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) (because the FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable, we hold that it does not displace the [FAA's] requirement that we enforce the employees' agreements as written.") To the extent an analysis of the arbitrability of Mr. Johnson's state law claims is needed, courts often order Kentucky wage and hour claims to arbitration as well. *See e.g. Northern Ky. Area Dev. Dist. v. Snyder*, 570 S.W.3d 531 (Ky. 2018); *Vossberg v. Caritas Health Servs., Inc.*, No. 2004-CA-000204-MR, 2005 WL 497255 (Ky. App. Mar. 4, 2005). Lastly, nothing in Kentucky's UCC statute precludes arbitration. *See* Ky. Rev. Stat. Ann. 355.9-101, *et seq.* Because a valid arbitration agreement exists, all of Mr. Johnson's claims fall within the scope of that agreement, and neither Congress nor the Kentucky legislature intended claims under the relevant statutes to be nonarbitrable, the Court will compel arbitration of Mr. Johnson's claims.

**4**

The Federal Arbitration Act provides that once a Court determines that the matter should be referred to arbitration, it "shall" stay the proceedings until the arbitration has ended, at which point the Court may confirm, vacate, or modify an award. 9 U.S.C. 3; 9 U.S.C. 9-11. The Supreme Court of the United States recently resolved a circuit split over whether the district court may dismiss the action when all claims are subject to arbitration, holding that it may not. *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) ("Here, as in other contexts, the use of the word 'shall' creates an obligation impervious to judicial discretion.") The Sixth Circuit has reasoned that this interpretation is in line with federal policy favoring arbitration, for if the Court dismissed the case at this juncture, the aggrieved party could immediately appeal, in contradiction of the Federal Arbitration Act. *Arabian Motors*, 19 F.4th at 942 (noting that

13

Section 16 of the FAA allows immediate appeals of court order denying arbitration but defers appellate review of court orders directing arbitration until the confirmation stage of the case). Thus, despite this Court's finding that all of Mr. Johnson's claims shall be arbitrated in accordance with the Dispute Resolution Agreement, the Court must stay these proceedings until a final decision is reached in arbitration.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows

1. Defendant HCL America's Motion to Compel Arbitration **[R. 11]** is **GRANTED**;
2. The claims set forth in Plaintiff Mark Johnson's Complaint **[R. 1-1]** are **REFERRED** to arbitration in accordance with the Dispute Resolution Agreement;
3. This matter is **STAYED** pending arbitration proceedings; and
4. Every ninety (90) days, beginning ninety (90) days after entry of this Order, the parties **SHALL** jointly file a status report on the status of arbitration.

This the 18th day of November, 2025.

Gregory F. Van Tatenhove
United States District Judge

14